IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr147-WKW |
| | ) | WO |
| LOUIS HERNANDEZ-ARELLANO | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Louis Hernandez-Arellano filed a motion to suppress evidence in this case (Doc. #50), and the government filed a response (Doc. #56). The court held a hearing on the motion to suppress on August 29, 2006. For the reasons set out below, the motion to suppress is due to be denied.

**Facts**

On May 5, 2006, DEA special Agent Neil Thompson received information from a confidential informant ("CI") that Ricardo Cajero, who had been a target of DEA investigation for three or four months, possessed a large quantity of marijuana which he had offered to sell or provide to the CI. The CI arranged a meeting with Cajero to obtain the marijuana at a Liberty gas station located at the Mitylene exit on I-85 near Montgomery, Alabama. Thompson and other agents made plans to intercept the load of marijuana as it was being transferred to the CI. Toward this end, agents set up surveillance at the Liberty gas station, and also at a second address on Green Acres Drive in Montgomery, which agents believed to be a "stash location" for Cajero. Thompson contacted an Alabama state trooper to assist in the stop of any vehicle that might be carrying marijuana or other drugs.

At around 9:20 pm on May 5th, agents observed the CI making contact with Cajero at the gas station. The CI then telephoned Thompson to tell him that the drugs were on their way. At about the same time, agents at the Green Acres Drive location saw a silver Dodge pick-up truck, which had been parked in the driveway or on the street, pull into the garage of the residence after another vehicle was moved to make way for the truck. The Dodge truck remained in the garage for five to ten minutes, then left the residence and proceeded to the Liberty gas station at the Mitylene exit.

The Dodge truck traveled from the Liberty gas station parking lot to the parking lot of the Waffle House near the gas station. There, the driver of the truck – who was later identified as the defendant, Louis Hernandez-Arellano[1] – met with Cajero and the CI for a few minutes. The CI then left the parking lot in his car, followed by Hernandez and Cajero in the Dodge truck. Both vehicles drove north on I-85. The CI contacted Thompson and told him that the Dodge truck "was basically full of marijuana. He said he saw a lot of marijuana in the truck in bundles."

Thompson got into the state trooper's marked patrol car with the driver, Trooper Sutley, and followed the vehicles. Thompson and Sutley observed that the Dodge truck did not have a valid tag (the only tag visible was a car dealer's tag) and that it ran off the road at least twice. Sutley also observed that the truck did not have a working tail light or tag light. Sutley turned on his blue lights and the truck pulled over to the side of the road. Cajero, the passenger, fled from the vehicle, and Thompson apprehended him after a short

---

[1] After he was apprehended, Hernandez initially gave agents a false name.

chase.

Meanwhile, Trooper Sutley approached the passenger side of the truck. When he reached the rear of the vehicle, Sutley could smell the odor of raw marijuana. As he got closer to the truck, he could see bales of what he believed to be marijuana in plain view. According to Sutley, the driver of the truck was attempting to get the vehicle shifted into gear in order to drive away. Sutley told the driver to stop and put his hands up. The driver put his hands up, and Sutley reached in, turned off the ignition, and took the keys. Sutley then went around to the driver's side of the car, took out Hernandez, and placed him in custody. Sutley patted Hernandez down and found approximately two ounces of what appeared to be cocaine in Hernandez' pants pocket.

Trooper Sutley then walked his drug dog around the vehicle. The dog alerted to the outside of the truck. In addition, after Thompson apprehended Cajero, Thompson observed several tape-wrapped bundles in the Dodge truck that were consistent with his previous observations of packaged marijuana. He could also smell the odor of raw marijuana coming from the truck. When agents searched the truck, they found approximately 205 pounds of marijuana.

The agents who were watching the Green Acres Drive location continued their surveillance. Thirty minutes to an hour after the Dodge truck was stopped, a red car driven by co-defendant Tavares Mabson drove away from the house. Mabson proceeded to the Bruno's parking lot on Perry Hill Road, where agents attempted to talk with him. When the agents approached, Mabson threw down a small bag of cocaine and a small bag of marijuana. Mabson was arrested.

Approximately 30 minutes after Mabson left the Green Acres Drive residence, co-defendant Taramesha Fountain was approached and detained by agents as she was preparing to leave the house. About 15 minutes later, agents obtained a search warrant for the residence, which they proceeded to execute. They found approximately 30 pounds of marijuana in the truck of a vehicle parked inside the garage; a roll of black plastic shrink wrap that was consistent with the wrapping on the bundles of marijuana found in the Dodge truck; digital scales; some $5,000 in currency; documents relating to Cajero, including two Texas driver's licenses; firearms; and approximately one pound of marijuana seized from a bedroom.

## Discussion

Defendant Hernandez contends that the evidence seized and any statements obtained as a result of the traffic stop[2] are due to be suppressed on the ground that the traffic stop was pretextual and conducted without reasonable suspicion or probable cause.

---

[2] Defendant's motion does not seek suppression of evidence seized at the Green Acres Drive residence or in the Bruno's parking lot. Further, even if defendant's motion to suppress did address this evidence, defendant has not established that he had a reasonable expectation of privacy in either area. For example, with regard to the Green Acres Drive location, there is no evidence before the court that Hernandez was a resident or an overnight guest at this address. The only time that defendant was seen at the house was when he drove the Dodge truck inside the garage for five to ten minutes. Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); see also Crosby v. Paulk, 187 F.3d 1339, 1346 n. 10 (11th Cir. 1999); Lenz v. Winburn, 51 F.3d 1540, 1549 (11th Cir. 1995). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas, 439 U.S. at 134; see also United States v. Chaves, 169 F.3d 687, 690 (11th Cir.1999). "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment ... it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." Rakas, 439 U.S. at 134 (citation omitted).

The legality of a traffic stop is analyzed under Terry v. Ohio, 392 U.S. 1 (1968). Pursuant to Terry, "[l]aw enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)). "The Terry rationale allows police to stop a moving car based on a reasonable suspicion that its occupants are violating the law." Diaz-Lizaraza, 981 F.2d at 1220. "The reasonable suspicion required for a Terry stop is more than a hunch, at least 'some minimal level of objective justification,' taken from the totality of the circumstances." Id. at 1220-21 (citation omitted).

In this case, agents had a more than minimal level of objective justification for stopping the Dodge truck. Thompson and Sutley testified, and the court finds, that the Dodge truck did not have a valid tag (the only tag visible was a car dealer's tag), that the truck ran off the road at least twice, and that the truck did not have a working tail light or tag light. The agents believed, and the court also finds, that these traffic violations gave them probable cause to stop the truck. Thus, the stop of the vehicle was lawful. See United States. v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) ("[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred."); Ala. Code §§ 32-5-240(a)(1)(a); 32-5-240(c)(1); 32-5-240(c)(3); 40-12-258(d) (Requiring tail lamps and license plate lamps to be lighted after sunset); § 32-5A-88(1) (requiring that a vehicle shall be driven as nearly as practicable entirely within a single

lane).[3]

Further, even if the stop for traffic violations were "pretextual"– as the agents in this case admittedly believed that the occupants of the truck were engaged in drug activity – the Supreme Court and the Eleventh Circuit have determined that "ulterior motives will not invalidate police conduct based on probable cause to believe a violation of the law occurred." Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004); see also Whren v. United States, 517 U.S. 806, 812-13(1996); United States v. Holloman, 113 F.3d 192, 194 (11th Cir.1997). As the Eleventh Circuit has noted, "under Whren, the constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officer involved or of the theoretical reasonable officer." Id. (internal quotation marks and citation omitted). Thus, so long as the officers possessed probable cause to believe that the truck committed a traffic violation, the stop complied with the Fourth Amendment regardless of any desire the officers had to intercept drugs. Id.

In addition, the agents had a reasonable, articulable suspicion based on objective facts that Hernandez and Cajero had engaged in, or were about to engage in, criminal activity in the form of drug trafficking, in addition to the traffic violations in question. Those facts included: the agents' previous investigation of Cajero; the information provided by the

---

[3] The court notes that Ala.Code § 40-12-264(a) provides that "Any person ... acquiring a new or used motor vehicle may be granted a grace period of 20 calendar days from date of acquisition to procure a license tag or plate." In this case, the record does not reflect the date on which Hernandez or any other person acquired the Dodge truck. However, the court concludes that it was reasonable for officers to stop the truck in order to determine whether or not the dealer's tag should have been replaced with a regular license plate by the date of the stop. Further, officers had additional probable cause to stop the vehicle, as described herein.

confidential informant that Cajero possessed a large quantity of marijuana which he had offered to sell or provide to the CI; the fact that Cajero appeared for the meeting arranged by the CI as planned; the fact that, just after the CI telephoned Thompson to tell him that the drugs were on their way, agents at the Green Acres Drive location, which the officers believed to be a stash house, saw the Dodge truck pull into the garage and then proceed to the Liberty gas station; the fact that Hernandez, the driver of the truck, met with Cajero and the CI for a few minutes, and then Cajero got into the truck and the truck followed the CI; and the fact that the CI contacted Thompson and told him that he saw a lot of marijuana in the truck in bundles. Under the totality of the circumstances, these facts constituted a sufficient, reasonable and objective basis for agents to detain the truck for an investigatory stop.

The warrantless search of the vehicle after the stop was also justified under the Fourth Amendment. The smell of narcotics alone may support a finding of probable cause. See, e.g., United States v. Windrix, 405 F.3d 1146, 1152 (10th Cir. 2005) ("[T]he scent of methamphetamine, wherever detected, gives qualified officers probable cause to search for methamphetamine and evidence of methamphetamine manufacturing."); Kleinholz v. United States, 339 F.3d 674, 677 (8th Cir. 2003) ("The smell of ether might alone support a finding of probable cause."); United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001) (The odor of marijuana alone would almost certainly have given officer probable cause to believe that contraband was present in the apartment.); United States v. Brown, 250 F.3d 739 (5th Cir. 2001) (unpublished) ("The distinct odor of burnt marijuana, by itself, will provide probable cause to search a vehicle."); United States v. Littleton, 15 Fed. Appx. 189, 193 (6th Cir.2001)

(An officer's detection of the odor of marijuana in an automobile constituted probable cause to believe there was marijuana present). Clearly, the strong odor of raw marijuana emanating from the vehicle, combined with the circumstances discussed above – and, in addition, the fact that Cajero fled and Hernandez appeared to be trying to flee when officers approached, the fact that officers observed bundles of what appeared to be marijuana in the truck, and the fact that the drug dog alerted on the exterior of the vehicle – established probable cause for the search of the truck.

In addition, for the same reasons, Hernandez' arrest after the traffic stop was also lawful. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. The probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. Maryland v. Pringle, 540 U.S. 366, 370 (2003). The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and the belief of guilt must be particularized with respect to the person to be searched or seized. Id. Upon consideration of the totality of the circumstances as described above and the applicable legal standards, the court finds no violation of the Fourth Amendment in this case.

## Conclusion

For the reasons set out above, it is the RECOMMENDATION OF THE

MAGISTRATE JUDGE that the motion to suppress (Doc. #50) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before close of business September 28, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 15th day of September, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE